To:  Benjamin H. Settle, presiding Judge

    David W. Christel, and referral

Filed in: Western District of Washington | United States District Court

**Re: 2:14-cv-01388-BHS-DWC** Ruth v. Glebe et al

    Letter in support of Matthew R. Ruth & Declaration of Kristine A. Kain executed on March 29, 2016.

Our system of law requires prisoners like Matthew Ruth and many others to surrender their freedom. However, the law does not require them to surrender their human dignity or the minimal constitutional rights that they have while in prison. Matthew Ruth, a prisoner activist seeking to make positive contributions to the interests of prisoners, has been tormented with what is said to be the biggest obstacle to significant and lasting progress while incarcerated. The retaliatory acts of prison officials because he chooses to exercise his constitutional rights.

I write this today because WA State prison officials have chosen to punish Mr. Ruth for filing the following lawsuit against them.  https://drive.google.com/file/d/0B7DGxQtMvzq5VnFIVV9kV1I5amM/view?usp=sharing

He also exposed their corruption by making it known the department's role in the death of inmate Michael Lindsey this past December. Ruth has been subjected to the retaliatory abuse of the department's disciplinary process by prison guards, I & I, his counselor and department heads at the executive level of the Washington State Department of Corrections.

They have many times unnecessarily confiscated Ruth's legal documents while they trashed his cell. Each time it takes him 2 to 3 days to get his legal paperwork back in order. They then proceed to write false disciplinary reports in order to put him in and keep him in segregation, otherwise known as solitary confinement. His life has been threatened more than once. He now is in the process of an illegal transfer to Washington State's most dangerous prison, the Walla Walla State Penitentiary, where they have classified him to be placed with the worst violent offenders by classifying him to closed custody. He will be confined to his cell for 23 hours a day. Officials have blatantly told Ruth that the reason they are doing this is because of the Facebook posting that I posted on his Facebook regarding Michael Lindsey's death. I am Matthew Ruth's Power of Attorney and maintain his Facebook page while he is incarcerated. It is both our rights to freely express this information to the public about the events that lead to inmate Michael Lindsey's death, if we so choose.

    *On February 17, 2016, Chief United States Magistrate Judge, James P. Donohue stated in a court order regarding Ruth's Federal Habeas Corpus and his active lawsuit against the department, the following:*

"1 Indeed, petitioner's allegations of retaliation are perplexing. The Court is left
scratching its head as to why a prisoner being infracted for a "dirty UA" was denied access to a pen, paper, or books for many days. Dkt. 30 at 6..."

    *Contrary to this federal court order, since Matthew Ruth was placed in segregation on February 6, 2016, he has missed all of his court ordered deadlines because his counselor, Sarah Sullivan and John Thompson who is the Stafford Creek Law Librarian, refused to file his legal pleadings. He has also been denied access to the courts by not allowing him to use the prison's law library and by not giving him his legal mail and paperwork all because John Thompson said he could not verify that Ruth had a legal deadline. They confiscated items of his from his cell, to include his legal work which is necessary to sufficiently litigate his cases. Still, these items have not been returned to him. Mr. Ruth wrote his Traverse without the AAG's response to his Habeas Petition. Other items of Ruth's have been stolen by guards and have not yet been returned. They took his typewriter away from him and gave him an infraction for having the same typewriter that he has always possessed. This typewriter has been through many documented cell searches where it has always been approved as being his and put on his property list.*

*After performing a cell search while in segregation, Ruth was harassed and disciplined for having staples in his paperwork. The staples that were brought to Ruth as evidence were unattached to his paperwork. DOC policy states that staples are to be removed from documents by the mailroom staff before distributing an offender's mail. None of these bogus assertions that have been used by DOC to discipline Mr. Ruth would ever stand a chance in a court of law.*

On Tuesday March 22, 2016, I contacted headquarters for the Washington State Department of Corrections and spoke with Tracy. When asked about Mr. Ruth's status, she told me he had been finalized to Clallam Bay Corrections Center and would be arriving there within the next two weeks. The decision took place after the Facility Risk Management Team (FRMT) conducted a hearing regarding Ruth. See policy 320.200 ADMINISTRATIVE SEGREGATION, which I have attached.

It wasn't until Thursday that I spoke with Ruth who was unaware of this information. He told me that no one had said anything to him about this classification but said his counselor and I & I had been pushing for him to go to Walla Walla so they could, "Bury him," as they had stated more than once.

Thursday afternoon Ruth's father, Matt Stroud called headquarters and was told that Matthew Ruth had been finalized to the Walla Walla State Penitentiary. The next morning I spoke to Executive Secretary Chris Parker. When I asked about the change in Ruth's finalization she informed me that this had absolutely nothing to do with Matthew Ruth. She said there was not enough bed space at Clallam Bay. Later that day I called Clallam Bay Corrections Center and inquired about how many bed spaces were available. I was told that there are exactly 142 open bed spaces available and that almost never is there not any bed space available at Clallam Bay.

Monday, March 28, I contacted the head of DOC, Dick Morgan and spoke to his secretary who referred me to Robert Herzog who is the Deputy Director of Prisons. Mr. Herzog's secretary answered my call and I asked her why there was a change made to Ruth's classification. She told me with a biased tone in her voice that, "Mr. Ruth knows what he has done and why his classification has changed."

I informed her that he did not know anything about this and I also told her what Chris Parker had said when she told me it was nothing that Matthew Ruth did. It was due to lack of bed space. She then hung up on me while I was in mid-sentence.

> *Once an inmate's classification has been finalized the only way to change the final decision is for the inmate to appeal the decision. The inmate must be given all documents pertaining to the finalization within 24 hours of being finalized and then he can appeal. Matthew Ruth has been denied due process in both these instances of classification as he has not been informed by the department about where they are transferring him and he has not been provided with the paperwork that he is supposed to be given per DOC policy in order to appeal this decision. This transfer was not properly facilitated and should have never taken place.*

Ultimately, the reason for the transfer of Matthew Ruth's classification from Clallam Bay to Walla Walla was because someone put a map of Clallam Bay Corrections Center in his property. Stafford Creek's CCO Crane says he searched Ruth's property three times before it was packed for Clallam Bay. He found no maps in Ruth's property. Mr. Ruth has been in segregation since March 6, 2016. He was unaware that he was going to Clallam Bay. He had no idea he would be going to closed custody at any facility. Matt Ruth's cell has been searched 17 times in the past couple of months and no map was ever found in his property. If in fact, a map was found in his property, they would have given him an infraction for it.

Mr. Lehman, from I & I at Stafford Creek told Ruth that he knows the map *was not* in Mr. Ruth's property prior to this accusation. He admitted to Ruth that department officials do not like him. This transfer from minimum custody at Stafford Creek, to being finalized at Clallam Bay and then to closed custody at the Walla Walla State Penitentiary, happened overnight. At first it was due to a lack of bed space. Now it is because of a fictitious map that was said to have mysteriously appeared in Matthew Ruth's property that he hasn't even had access to. This map is yet to be shown to Mr. Ruth. He did not receive an infraction for the map. The department is trying to pass this off as a security threat for possessing a map that contains escape plans at Clallam Bay. Ruth's classification to Clallam Bay was switched to Walla Walla as his counselor, Sarah Sullivan had hoped for. Matthew Ruth's best interest was totally disregarded

here. Please refer to the attached letter I wrote in support of Matthew Ruth which mentions the pros and cons of each of the two facilities in relation to what's in Mr. Ruth's best interest.

---

Lastly, I received Matthew Ruth's public disclosure from the Snohomish County prosecutor's office and also from the Washington State Patrol. There are four CD's that contain Ruth's discovery for Snohomish County Superior Court cause number 03-1-02451-6, for which he is currently serving time. These discs consist of numerous police reports with crucial information to his case that he has no knowledge of. The Snohomish County prosecutor's office tried to send the discs to Ruth while he was at Stafford Creek but the facility denied them. I then made paper copies that I sent in which were also denied. Matthew Ruth is a Pro Se litigant fighting his case and there are documents that would allow him an evidentiary hearing on these discs.

The Department of Corrections denying Ruth's own discovery stating that it is a security threat is unreasonable. Matthew Ruth knows who the victims were in his case. The events that took place and statements made by the victims while he was in custody, prior to trial, is what he has no knowledge of. I can't emphasize enough how important it is that he see these police reports and the other content on the CD's. The entity's that provided his public disclosure have already redacted everything on the discs that by law, they could. It should be ordered that Mr. Ruth can view his public disclosure files.

I have also attached a printout of Matthew Ruth's Appellate Court Case Summary for case number 746944. Because the Department of Corrections would not file Ruth's legal documents for this case, Division One terminated Review on 03-25-16. I am submitting this as proof of injury that have come from the active interference and denial of access to the courts that Ruth has faced.

Signed this 29th day of March, 2016

*[signature]*

Kristine Kain



*Letter to Headquarters regarding where to send matthew*

Kris Kain <kriskain@gmail.com>

## Matthew Ruth 879492
1 message

**Kris Kain** <kriskain@gmail.com>  Wed, Mar 16, 2016 at 2:29 PM
To: suzanne.vaillancourt@doc.wa.gov

Kristine Kain

1001 N Madison St

Tacoma, WA 98406

kriskain@gmail.com

253 883-7731


March 17, 2016

To:  Suzanne Vaillancourt

**Classification** – Washington State Department of Corrections


I am sending you this letter with regard to Matthew R. Ruth, DOC # 879432. Matthew has been under the jurisdiction of the Department of Corrections since 2004 and is currently being "Closed out" at Stafford Creek and will be sent to either Walla Walla or Clallam Bay in the next couple of weeks. It is my request and also that of Michael and Janet Ruth and Matthew's biological father, Matt Stroud that he be sent to Clallam Bay for the next year and a half before he goes to camp and begins his re-entry into the community.


Prior to transferring to Stafford Creek, Matthew was at Clallam Bay where he successfully received a college degree along with certifications in the field of computer science. Since Matthew has been at Stafford Creek, he has been on a waiting list for certain educational and work programs. Not once was he given a job or registered in any school programs. Presently, Matthew's time in prison is somewhat stagnant since he has exhausted all educational avenues that the Washington State prisons have to offer. Studies show that at this point in a prison sentence the prisoner will most likely be negatively affected if educational growth is halted.


However, Recently Clallam Bay has added the second half of the computer classes which Matthew has already achieved certification in. The only way to enroll in these new classes is to send him to Clallam Bay. None of the other prisons offer these programs.

Sending Matthew to Walla Walla with less than two years left before he goes to camp would not be beneficial for him or any of us for that matter. He has family who consistently visits him. During his time at Stafford Creek he has developed a positive relationship with his brother who insists that this continue, but says if he is sent to Walla Walla, he will not be able to travel to visit Matthew. His adoptive parents, Michael and Janet Ruth, both have some health issues that are already keeping them from traveling to Stafford Creek to visit him. Ultimately, we would like to see him go to Monroe so he can be near all of us and can receive weekly visits. Lastly, Matthew and I are planning on getting married. We are currently in the marriage counseling phase, which is a requirement to get married in a WA State prison. This is the last step we need to have completed before the actual ceremony.

For the above reasons I am requesting that he be relocated to the Clallam Bay Corrections Center in Clallam Bay, WA. I ask that you please consider these facts when determining where he will be placed next.

Washington Courts - Search C...

dw.courts.wa.gov/index.cfm?fa=home.casesummary&crt_itl_nu=A01&casenumber=746944&searchtype=aName&tc

# WASHINGTON COURTS

Courts Home | Search Case Records                                             Search | Site Map | ?/ eService Center

Home | Summary Data & Reports | Resources & Links | Get Help

## Appellate Court Case Summary

*[Handwritten note: "Proof of case dismissed because [our?] [official?] would not file pleading"]*

### About Dockets

**Case Number:** 746944
**Filing Date:** 01-29-2016
**Coa, Division I**

| Event Date | Event Description | Action |
|---|---|---|
| 01-27-16 | Case Received and Pending | Status Changed |
| 01-29-16 | Personal Restraint Petition | Filed |
| 03-07-16 | Statement of Finances | Not filed |
| 03-25-16 | Ruling terminating Review | Filed |
| 03-25-16 | Decision Filed | Status Changed |
| 03-25-16 | Trial Court Action | Not Required |
| 04-25-16 | Certificate of Finality | Due |

**About Dockets**

You are viewing the case docket or case summary. Each Court level uses different terminology for this information, but for all court levels, it is a list of activities or documents related to the case. District and municipal court dockets tend to include many case details, while superior court dockets limit themselves to official documents and orders related to the case.

If you are viewing a district municipal, or appellate court docket, you may be able to see future court appearances or calendar dates if there are any. Since superior courts generally calendar their caseloads on local systems, this search tool cannot display superior court calendaring information.

**Disclaimer**

**What is this website?** It is a search engine of cases filed in the municipal, district, superior, and appellate courts of the state of Washington. The search results can point you to the official or complete court record.

**How can I obtain the complete court record?**
You can contact the court in which the case was filed to view the court record or to order copies of court records.

**How can I contact the court?**
Click here for a court directory with information on how to contact every court in the state.

**Can I find the outcome of a case on this website?**
No. You must consult the local or appeals court record.

**How do I verify the information contained in the search results?**
You must consult the court record to verify all information.

**Can I use the search results to find out someone's criminal record?**
No. The Washington State Patrol (WSP) maintains state criminal history record information. Click here to order criminal history information.

**Where does the information come from?**
Clerks at the municipal, district, superior, and appellate courts across the state enter information on the cases filed in their courts. The search engine will update approximately twenty-four hours from the time the clerks enter the information. This website is maintained by the Administrative Office of the Court for the State of Washington.

**Do the government agencies that provide the information for this site and maintain this site:**

▸ **Guarantee that the information is accurate or complete?**
  NO
▸ **Guarantee that the information is in its most current form?**
  NO
▸ **Guarantee the identity of any person whose name appears on these pages?**
  NO
▸ **Assume any liability resulting from the release or use of the information?**
  NO

Back to Top | Privacy and Disclaimer Notices

|  STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **APPLICABILITY**<br>**PRISON**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | **REVISION DATE**<br>6/14/12 | **PAGE NUMBER**<br>1 of 8 | **NUMBER**<br>**DOC 320.200** |
| **POLICY** | **TITLE**<br>**ADMINISTRATIVE SEGREGATION** | | |

**REVIEW/REVISION HISTORY:**

Effective:   11/30/84 DOC 430.010
Revised:    10/1/85
Revised:    9/1/88 DOC 320.200
Revised:    5/9/00
Revised:    11/27/06
Revised:    3/7/07 AB 07-004
Revised:    3/19/08
Revised:    11/4/08 AB 08-032
Revised:    7/9/09
Revised:    8/9/10
Revised:    6/14/12

**SUMMARY OF REVISION/REVIEW:**

Numerous changes. Read carefully!

**APPROVED:**

Signature on file

_____       6/12/12
**BERNARD WARNER**, Secretary         Date Signed
Department of Corrections



| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 6/14/12 | PAGE NUMBER 2 of 8 | NUMBER **DOC 320.200** |
| **POLICY** | TITLE **ADMINISTRATIVE SEGREGATION** | | |

**REFERENCES:**

DOC 100.100 is hereby incorporated into this policy; WAC 137-32; ACA 4-4250; ACA 4-4251; ACA 4-4253; ACA 4-4254; ACA 4-4404; DOC 320.260 Secured Housing Units in Stand Alone Minimum Security Facilities

**POLICY:**

I. The purpose of administrative segregation (Ad Seg) is to temporarily remove an offender from the general population until a timely and informed decision can be made about appropriate housing based on his/her behavior. Procedures governing administrative segregation of offenders in Prisons will comply with WAC 137-32.

II. An offender may be assigned to Ad Seg when s/he:

   A. Poses a threat to self, staff, other offenders, or property, or to the orderly operation of the facility.
   B. Requests protection or is deemed by staff to require protection. [4-4251]
   C. Is pending transfer or is in transit to a more secure facility. [4-4404]
   D. Poses a serious escape risk.
   E. Is pending investigation.

**DIRECTIVE:**

I. General Requirements

   A. [4-4250] A multidisciplinary Facility Risk Management Team (FRMT) may recommend segregating offenders from the general population and recommend an assignment to Ad Seg.

   B. Based on the multidisciplinary FRMT's recommendation, the following may order immediate segregation:

      1. Superintendent/designee
      2. Associate Superintendent
      3. Captain
      4. Correctional Program/Correctional Mental Health Program Manager

   C. The following can order immediate segregation only when it is necessary to protect the offender or others:

      1. Shift Commander,
      2. Correctional Unit/Correctional Mental Health Unit Supervisor, or

|  STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 6/14/12 | PAGE NUMBER 3 of 8 | NUMBER **DOC 320.200** |
| **POLICY** | TITLE **ADMINISTRATIVE SEGREGATION** | | |

      3. Facility staff who conduct facility investigations as a part of their regular duties and are designated by the Superintendent to make Ad Seg referrals.

  D. The Superintendent will designate an Ad Seg Hearing Officer at the level of Correctional Specialist or above at major facilities and Classification Counselor 3 or above at minimum facilities.

II. Initial Placement

  A. [4-4251] The authorizing staff must determine that placement on Ad Seg status is appropriate and document the reasons on DOC 17-075 Segregation Authorization and DOC 05-101 Administrative Segregation Referral.

      1. [4-4404] In an emergency transfer (i.e., one in which the sending facility does not have the resources to manage the offender), sending facility staff will complete DOC 05-101 Administrative Segregation Referral and Section I of DOC 17-075 Segregation Authorization, and send to the receiving facility along with the offender.

  B. The Shift Commander will ensure that:

      1. The offender receives DOC 05-797 Ad Seg/IMU Review Notice/ Appearance Waiver, DOC 05-101 Administrative Segregation Referral, and the offender copy of DOC 17-075 Segregation Authorization immediately after initial placement so that notice is given at least 48 hours in advance of the meeting.

      2. Health care staff are immediately informed of the placement, by telephone, to provide assessment and review as indicated by the protocols established by the Health Authority.

      3. DOC 05-101 Administrative Segregation Referral is forwarded to both the Superintendent/designee and Ad Seg Hearing Officer for review at or before the initial informal review, and not later than 72 hours after the offender's segregation. [4-4250]

      4. In the absence of the Superintendent, the Duty Officer is notified and reviews the reasons for placement within 72 hours of the offender's segregation. [4-4250]

  C. [4-4251] A voluntary protective custody offender will be initially assigned to Ad Seg upon receipt of his/her written request for temporary assignment to protective custody. The offender will provide a written, signed, confidential

|  STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | APPLICABILITY **PRISON** OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE 6/14/12 | PAGE NUMBER 4 of 8 | NUMBER DOC 320.200 |
| **POLICY** | TITLE **ADMINISTRATIVE SEGREGATION** | | |

        statement requesting protective custody, which identifies specific actions and individuals posing a threat. This document will be placed in the offender's central file, with copies forwarded to the facility's Intelligence Officer and the Ad Seg Hearing Officer.

    D.    Upon placement of the offender in Segregation, DOC 05-091 Daily Report of Segregated Offender or electronic version will be initiated and maintained by correctional staff responsible for the Segregation Unit.

III.    Multidisciplinary FRMT Reviews

    A.    The Ad Seg Hearing Officer will preside over meetings of a multidisciplinary FRMT for the intermediate and final reviews of an offender assigned to Ad Seg status. [4-4253] [4-4254] The team will include, at a minimum:

        1.    The offender, unless s/he waives participation,
        2.    The Correctional Unit Supervisor (CUS) or Counselor from the sending unit, and the Counselor from the unit currently assigned,

            a.    The CUS/Counselors can participate by telephone or provide input by email prior to the review.

        3.    The assigned Unit Supervisor, and
        4.    A custody/security representative, the rank of Sergeant or higher.

    B.    Each of the following disciplines must be represented when they are relevant to the offender being reviewed. Participating team members will be documented in the Comment section of the Custody Facility Plan. An FRMT is only considered multidisciplinary when one or more of the following are included as documented members:

        1.    Medical professional, for offenders with specific medical related PULHESDXT "P" codes of 4 or higher.

        2.    Supervising Psychologist/designee, for offenders with PULHESDXT "S" codes of 3 or higher and/or "H" codes of 4.

        3.    ADA Coordinator, for offenders with PULHESDXT "L", "E", or "X" codes of 3 or higher.

        4.    Other program area supervisors who have direct supervision of the offender's activities and knowledge of his/her behavior.

    C.    An initial informal review will be held within 2 working days of initial placement. An intermediate review will occur within 14 days following the initial informal

|  STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE<br>6/14/12 | PAGE NUMBER<br>5 of 8 | NUMBER<br>**DOC 320.200** |
| **POLICY** | TITLE<br>**ADMINISTRATIVE SEGREGATION** | | |

review. Within 30 days of the intermediate review, a final review will be completed to make a final determination. Any further reviews require prior approval from the Assistant Secretary for Prisons/designee. [4-4253]

    1.    Time on Ad Seg status begins when the offender is initially placed in Segregation. The disciplinary and Ad Seg process will run concurrently.

        a.    In instances where behaviors requiring Administrative Segregation are not known at the time of placement, the time begins when the Ad Seg referral is made. All remaining disciplinary segregation time will run concurrently.

    2.    The Ad Seg Hearing Officer/designee will notify offenders at least 48 hours in advance of the intermediate and final reviews using DOC 05-797 Ad Seg/IMU Review Notice/Appearance Waiver. The waiver will indicate the dates of the next reviews.

D.    The Ad Seg Hearing Officer will ensure that all requested witnesses receive DOC 05-094 Witness Statement, and that those statements are returned to the segregated offender no less than 24 hours prior to the meeting.

    1.    Witness statements will be limited to statements of fact and related to the offending behavior.

E.    The offender may be present at all stages of the meeting, except during discussion involving information from confidential sources.

F.    The Ad Seg Hearing Officer will document reviews using the following:

    1.    Initial Informal Review - DOC 05-092 Administrative Segregation Review.
    2.    Intermediate Review - DOC 05-092 Administrative Segregation Review.
    3.    Final Review - Information presented (e.g., witness statements), complete Custody Facility Plan, and DOC 05-092 Administrative Segregation Review.

G.    The Ad Seg Hearing Officer has the authority to schedule offenders, staff, or other persons to appear and present/clarify information that may be relevant to the decision. To the extent possible, confidential information presented to the Ad Seg Hearing Officer will be presented by the staff who received the information. The source will be identified to the Ad Seg Hearing Officer, except when the Superintendent directs that the identity remain confidential.

H.    When the placement is for an investigation, an update on the investigation will be presented to the Ad Seg Hearing Officer before the intermediate review. The



| | APPLICABILITY | | |
|---|---|---|---|
| STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS | **PRISON** OFFENDER/SPANISH MANUALS | | |
| | REVISION DATE 6/14/12 | PAGE NUMBER 6 of 8 | NUMBER DOC 320.200 |
| **POLICY** | TITLE **ADMINISTRATIVE SEGREGATION** | | |

Investigator will submit the completed investigation to the Ad Seg Hearing Officer no later than 6 days prior to the final review.

    1.    In extraordinary situations, the Superintendent may request from the Assistant Secretary of Prisons/designee an extension of up to 14 days beyond the 47 days served.

        a.    All offenders retained on Ad Seg status for more than 47 days will be updated on their status by the Ad Seg Corrections Specialist every 14 days.

I.    The Ad Seg Hearing Officer will allow the offender to present testimony and/or clarify witness statements. The offender may present a written statement in lieu of, or in addition to, verbal testimony. The written statement will be included in the record.

J.    The Ad Seg Hearing Officer will document an offender's refusal to attend a review meeting.

K.    An interpreter will be provided for an offender who does not speak/understand English or is hearing impaired. An offender may request an interpreter using DOC 05-113 Request for Interpreter.

L.    If an offender is unable to understand the case, s/he may request an advisor to assist at the review meeting by completing DOC 05-121 Request for Staff Advisor. The advisor will be a staff, approved by the Superintendent, who is not ordinarily assigned responsibility for the offender.

M.    [4-4254] The Ad Seg Hearing Officer will complete and forward DOC 05-092 Administrative Segregation Review to the Superintendent/designee within one working day of each meeting.

    1.    Behavioral changes and/or program completions/referrals will not necessarily result in discharge from Ad Seg, but will be considered along with all other relevant circumstances.

    2.    If the decision is to transfer or refer for intensive management, the Ad Seg Hearing Officer will also forward a Custody Facility Plan to the Superintendent/designee, who will forward the recommendation to the Classification Unit at Headquarters for approval. The offender may be retained on Ad Seg status for a maximum of 14 additional days pending transfer to another facility or IMU.

Case 2:14-cv-01388-BHS-DWC   Document 80   Filed 04/28/16   Page 12 of 13

|  STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE<br>6/14/12 | PAGE NUMBER<br>7 of 8 | NUMBER<br>DOC 320.200 |
| **POLICY** | TITLE<br>**ADMINISTRATIVE SEGREGATION** | | |

    3.    If the decision is to release, the Ad Seg Hearing Officer will forward a Custody Facility Plan to the Superintendent/designee. Releases do not require review approval from the Classification Unit at Headquarters.

N.    [4-4254] The Superintendent or a designee who is at the Associate Superintendent level in major facilities or the Lieutenant/Correctional Program Manager level in minimum facilities will review the Ad Seg review recommendation and reach a decision within one working day of the initial placement meeting.

O.    The Ad Seg Hearing Officer will notify the offender of the Superintendent/designee's decision within one working day of receipt of the decision using DOC 05-092 Administrative Segregation Review.

IV.    Continuation of Ad Seg Placement

    A.    If the offender is retained in Ad Seg for more than 47 days, one of the following actions will occur:

        1.    Referral to the Headquarters IMS Review Committee for placement on Intensive Management Status (IMS),

        2.    Return to the general population with clear behavioral expectations for remaining there, or

        3.    Transfer to a more appropriate facility/unit, including an out of state facility, which may enhance possible return to a general housing assignment.

V.    Appeal

    A.    If the Headquarters IMS Review Committee decides to place the offender on Intensive Management Status, the offender has 24 hours from the time s/he is notified of the decision to appeal to the Assistant Secretary of Prisons in writing. Appeals should cite specific objections and include any written information the offender feels is relevant.

VI.    Administrative Release

    A.    [4-4254] The Superintendent or a designee who is at the Associate Superintendent level in major facilities or the Lieutenant/Correctional Program Manager level in minimum facilities may release an offender from Ad Seg at any time if it is determined that the conditions or reasons for placement no longer exist. Ad Seg release will be documented on DOC 05-092 Administrative Segregation Review.

|  STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS | APPLICABILITY<br>**PRISON**<br>OFFENDER/SPANISH MANUALS | | |
|---|---|---|---|
| | REVISION DATE<br>6/14/12 | PAGE NUMBER<br>8 of 8 | NUMBER<br>**DOC 320.200** |
| # POLICY | TITLE<br>**ADMINISTRATIVE SEGREGATION** | | |

B. A request to transfer from one facility to another as an Ad Seg release to general population will be made using the Custody Facility Plan and forwarded to the Superintendent/designee, who will forward recommendation to the Classification Unit at Headquarters for approval. The recommendation will clearly state the reason for transfer.

    1. Transfers for protection or separation concerns will be documented in the offender's electronic file.

C. An offender who voluntarily makes a written request for segregation or protective custody may request, in writing, to be returned to his/her housing unit at any time. This request may or may not be approved as indicated by a threat/risk assessment and housing review.

## DEFINITIONS:

Words/terms appearing in this policy may be defined in the glossary section of the Policy Manual.

## ATTACHMENTS:

None

## DOC FORMS:

DOC 05-091 Daily Report of Segregated Offender
DOC 05-092 Administrative Segregation Review [4-4254]
DOC 05-094 Witness Statement
DOC 05-101 Administrative Segregation Referral
DOC 05-113 Request for Interpreter
DOC 05-121 Request for Staff Advisor
DOC 05-797 Ad Seg/IMU Review Notice/Appearance Waiver
DOC 17-075 Segregation Authorization